IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOSE L. LOPEZ,<br><br>      Plaintiff,<br><br><br><br><br>            vs.<br><br><br><br>SALT LAKE CITY CORPORATION, et al.,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:04-CV-252TS |

## I.  INTRODUCTION

This matter is before the Court on Defendant Salt Lake City (City) Motion for Summary Judgment on Plaintiff Jose Lopez's claims of employment discrimination on the basis of national origin and retaliation, and wrongful discharge.  Because Lopez has failed to come forward with evidence to rebut the City's proffered non-discriminatory reason for firing him, the City's Motion is granted.

## II   FACTUAL BACKGROUND

Lopez began work with the City as an airport shuttle bus driver in 1996–he performed this job well and had no disciplinary complaints.  On March 28, 1999, he was

promoted to Terminal Services Officer at the airport by his supervisor Bowers, who remained his supervisor thereafter.

In 1999, Lopez made several complaints of racial discrimination arising from problems with co-workers. In one, the co-worker was demoted. In 1999, Lopez and another employee were written up for aggressive behavior. In January 2000, Lopez was written up for not following directions. In January 2000, supervisors met with Lopez and his team about mutual problems. In March 2000, Lopez filed a discrimination complaint saying that he was being denied a raise.

The City reorganized the airport operation in 2002 and consolidated Lopez's position with another. On October 13, 2002, Lopez was assigned to the new position–Landside Operations Officer–at the same pay and benefits. As Landside Operations Manager, Lopez, controlled traffic near the airport and was to ensure that vehicles did not stop to wait for passenger and that no vehicles were left unattended.

On October 25, 2002, Lopez had a dispute with another employee. The same day, Plaintiff submitted a complaint of harassment and discrimination to the EEOC. It outlined seven allegations of discrimination, from discriminatory remarks by co-workers going back several years, to the allegation that the reorganization was discriminatory.

On November 18, 2002, his supervisor had a coaching and counseling session with Lopez about the incident and his job performance. The supervisor gave Lopez directions on job performance that including a warning that his failure to comply would result in progressive discipline up to, and including, termination.

On November 19, 2005, the supervisor prepared a letter outlining his concerns about the coaching and counseling session, alleging that Lopez had behaved inappropriately in the coaching and counseling session, and reiterating the directions provided at the meeting.  The supervisor handed the letter to Lopez in an envelope while he was working.  Lopez immediately opened the envelope, removed the letter, and, without looking at it, tore it up and put in the garbage while his supervisor stood there.

On December 4, 2002, his supervisor issued Lopez a formal notice of a pre-determination hearing to be held on December 12, 2002, and outlining the supervisor's concerns about several work incidents, including Lopez's tearing up of his memorandum.

On December 17, 2002, his supervisor issued Lopez a notice of a second pre-determination hearing, to be held on December 19, 2002.  This second notice outlined his supervisor's allegations that Lopez was not attending shift briefings as required for the job.

After the two pre-determination hearings, formal discipline in the form of a five-day suspension was imposed on Lopez and, after an appeal, upheld.

On January 23, 2003, Lopez and other employees were given a memo stating: "It is these slow times that I would like to address, asking you to fall back a little in our stringent enforcement of no waiting at the curb"[1] and "You may not however allow vehicles unattended, as there is still a zero tolerance for unattended vehicles within the 300 foot zone."[2]   The memo was discussed during Lopez's pre-shift briefing that day.

---

[1]Pl.'s Dep. at 81-82.

[2]Pl.'s Dep. at 80.

3

Later on that same day, Lopez allowed a car to be unattended while its driver went into the airport to pick up luggage for his wife.  The vehicle was unattended long enough for a tow truck to arrive.

On February 10, 2003, Lopez again received a notice of a pre-determination hearing scheduled for February 19, 2003, to address the unattended vehicle incident.  Lopez's position was that he afforded the driver leniency, per the City's policy.  After that pre-determination hearing, his supervisor decided to terminate Lopez's employment.  Lopez appealed and his termination was upheld by the Employee Appeals Board on July 3, 2003.

In March 2003, while his appeal was pending, Lopez applied for his old position of shuttle driver but was denied that request.  The airport director's position was that because he had not placed his former experience as a shuttle driver on the application, a more experienced person was hired.

## III.  DISCUSSION AND CONCLUSIONS

Previously in this case, the Court has dismissed all defendants except the City and all claims except Lopez's claims for (1) discrimination and wrongful termination based on national origin and (2) retaliation.  As an initial matter, the Court will grant summary judgment on the wrongful termination claim, as Plaintiff has conceded it by not addressing it in his brief.[3]  Insofar as the Verified Complaint alleges discrimination on the basis of the failure to hire Mr. Lopez for the shuttle driver position, that allegation was not included in

---

[3]*See Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004).

the Charge, or the Amendment to the Charge,[4] of discrimination at issue in this case and therefore the Court will grant the City summary judgment on that claim.  Similarly, because none of the events of 1999 are included in the Charge and Amendment at issue in this case, they are not relevant to this motion for summary judgment.

Turning to the remaining claims, the City moves for summary judgment on the national origin claim on the basis that Lopez does not establish a prima facie case and that, even if he did, no reasonable jury could conclude that the grounds for termination (poor performance) were pretextual.  The City also contends it had a legitimate, non-discriminatory ground for firing him and there is no evidence of retaliation.

The City contends that, at this summary judgement stage, Lopez may not rely on the "conclusory" allegations of his Complaint to establish his prima facie case.

Lopez's Complaint is a Verified Complaint.  "Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."[5]  To the extent that the Verified Complaint is based on personal knowledge, contains facts which would be admissible at trial, and shows that the affiant is competent to testify on the matters stated therein, it meets these requirements.[6]

---

[4] *See* June 11, 2001 Charge and the May 2, 2003, Amendment of that Charge.

[5] *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988); *See also Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1019 (10th Cir. 2002).

[6] *Id.*

Having considered the Verified Complaint, the Court finds that paragraphs 46, 51, 52 and 53, alleging that the supervisor directed other employees to follow Lopez around and document any poor performance, including writing up the incident with the unattended vehicles, lack foundation to show Plaintiff's personal knowledge of these allegations about what the supervisor said to, or did with, other people.  Therefore, they may not be relied upon for this summary judgment motion.

When additional allegations, such as allegations of discriminatory remarks and acts in 1999, which were not included in the Charge and Amended Charge of Discrimination at issue are excluded, the remaining non-conclusory allegations in the Verified Complaint do not state a prima facie case of national origin discrimination.

They do, however, state a prima facie claim for retaliation.  "To make out a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity; (2) that the employer took an adverse employment action against the plaintiff; and (3) that there exists a causal connection between the protected activity and the adverse action."[7]

> Retaliation claims under Title VII are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*. The plaintiff bears the initial burden of establishing a prima facie case of discrimination.  If the plaintiff does so, then the defendant must offer a legitimate, non-discriminatory reason for its employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.  A plaintiff may demonstrate pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.

---

[7]*Aquilino v. University of Kansas,* 268 F.3d 930, 933 (10th Cir. 2001).

The pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual. Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation.[8]

In this case, the Court finds that the allegations show a close proximity between the filing of Lopez's Charge of Discrimination and the adverse employment actions and, therefore, raise an inference of retaliation.

In response, the City contends that its materials show a non-discriminatory reason--poor performance--for the termination.  Lopez contends that the City's evidence is hearsay and moves for it all to be stricken.  The City's evidence consists of papers from Lopez's personnel file and his deposition testimony.

Federal Rule of Civil Procedure 56(c) and (e) together require that material supporting summary judgment be authenticated and be evidence that would be admissible at trial.

(c)   The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

* * *

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or

---

[8]*Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 -1206 (10th Cir. 2000) (citations and internal quotations omitted).

<u>certified copies of all papers or parts thereof referred to in an affidavit</u> shall be attached thereto or served therewith.[9]

The requirement that papers be sworn or affirmed may be waived.[10]   In this case, however, the Plaintiff has not waived the issue and instead has timely objected and moved to strike the materials. The City responds that the information is admissible as business records under Fed. R. Evid. 803(6) or public records under 803(8).  The Court need not address this contention, because it finds that the City may rely on the evidence of Lopez's deposition testimony in support of its Motion.  In that deposition testimony, Plaintiff admits he tore up his supervisor's letter and allowed an unattended vehicle to park in the 300 foot zone in direct violation of the zero tolerance policy reiterated to him earlier in his shift.  This evidence, together with the other deposition testimony cited by the City, is sufficient to meet the City's burden of offering a legitimate, non-discriminatory reason for its employment action.

Since the City has met its burden, Lopez then has the burden of demonstrating pretext.  He attempts to do so by citation to the findings resulting from his claim for unemployment benefits.  But Utah statutes specifically state that such findings are not "conclusive or binding" in any subsequent court case between the parties.[11]

The Court finds that Lopez has failed to "demonstrate pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[9]Fed. R. Civ. P. 56(c), (e) (emphasis added).

[10]*See Taylor v. Principi,* 141 Fed.Appx. 705, 708 (10th Cir. 2005).

[11]Utah Code Ann. § 35A-4-508(6)(b).

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[12]  Therefore, the City is entitled to summary judgment on the retaliation claim.

## IV. ORDER

Based on the foregoing, it is therefore

ORDERED that Defendant Salt Lake City's Motion for Summary Judgment is GRANTED.  It is further

ORDERED that Defendant Salt Lake City is entitled to judgment in its favor on all of Plaintiff Jose Lopez's claims.  The clerk of court shall enter judgment in favor of Defendants on all claims and close this case forthwith.

DATED  October 21, 2005.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[12]*Pastran*, 210 F.3d at 1206.

9